[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON MOTION TO DISMISS
The named plaintiff in this summary process action is the trade name of two partners. On October 6, 1960, Marcus and Jeane Hoberman filed a trade name certificate with the town clerk for CT Page 6449 the Town of West Hartford pursuant to § 35-1 of the General Statutes; the filing indicated that they were doing business as Harved Realty. No claim has been made that this filing was insufficient in any way. In 1972, Harved Realty became the owner of the premises in issue in this case. At some point in the past the principals of Harved Realty changed; at the time of trial and at the time this action was brought, the principals were Harvey Hoberman and Edwin Hoberman. The original trade name certificate had not been revised, so that the trade name certificate on file with the town was not accurate at the time.
The defendant discovered this discrepancy during or after the first of several trial sessions, and filed a "motion to dismiss and/or for judgment for failure to make out a prima facie case", with an accompanying memorandum. The plaintiff filed a revised certificate of adoption of trade name with the town clerk of the Town of West Hartford, as well as a memorandum in opposition to the motion filed in this court. The revised certificate shows the currently correct state of affairs.
The gravamen of the defendant's motion is that the named plaintiff lacks standing to bring the action, and the action should therefore be dismissed. The reasoning is that because the owners are Harvey and Edwin Hoberman, and because they had not amended the trade name certificate to show that they are the true owners until after trial was commenced in this case, then the action brought by the entity of the trade name lacks standing and Harved Realty was not a lawful entity. The plaintiff argues that § 35-1 should be strictly construed, and because there was initial compliance with the statute, and because the statute is silent as to any obligation to amend the certificate of trade name if the principals change, then noncompliance with § 35-1
has not been shown. The court agrees with the plaintiff, but for different reasons.
At common law, there was no impediment to acting under a fictitious name, so long as the use of the fictitious name was not was not fraudulent or misleading. 57 Am.Jur.2d 698, "Names" § 64. Every state has apparently enacted some version of the fictitious name statute, which, generally, require a public filing of some sort so that interested parties may discover information about the principals. Although the remedies and specific requirements vary[1], the general rule is that because the statutes are in derogation of the common law and are of a penal nature, they are to be strictly construed and are not to be CT Page 6450 extended to situations or parties not clearly within their provision. 57 Am.Jur.2d 698, Names § 65. One purpose of such statutes is to protect the public in general and creditors in particular from fraud; in the absence of fraud, noncompliance with the statute generally does not render contracts entered into by a noncomplying entity invalid or unenforceable. If specific remedies are imposed by statute, it has generally been held that the legislature did not intend that additional penalties, such as the inability to obtain relief in court, should be imposed. See 57 Am.Jur.2d 705-06, Names § 76.
Connecticut authority, though not plentiful, is consistent with the rubric stated above. In the seminal case of Sagal v. Fylar,89 Conn. 293 (1915), the plaintiff, who had not complied with the predecessor of § 35-1, sought to enforce a contract. The trial court had rendered judgment for the defendant on the ground that the failure to comply with the statute rendered the contract unenforceable. The Supreme Court reversed, because it was not the subject matter of the underlying contract which violated public policy. The court reasoned that the issue of whether noncompliance with the statute rendered the contract unenforceable was a question of legislative intent, and because a specific penalty was imposed by the statute which did not include any inability to maintain a cause of action, then the court should not legislate an additional penalty. The court held that the aim of the legislature was to encourage compliance with the registration requirement, and the legislature had determined that the criminal penalty was sufficient. "[C]ontracts otherwise lawful entered into in the course of a business carried on in disregard on the statute should be neither void nor unenforceable." Id., at 298. See also Wofsey v. New York Stamford Ry. Co., 106 Conn. 254 (1927); Metro BulletinsCorp. v. Soboleski, 30 Conn. App. 493, 499-500 (1993).
The Superior Court case of Pullman Comley v. Ruger,8 CSCR 269 (1993) (Leheny, J.), is instructive. In this case, the plaintiff had not complied with § 35-1. Judge Leheny held that the statutory violation did not deprive the plaintiff of access to the courts, as such prohibition was not part of the remedy provided by the statute, and the claim that the plaintiff lacked standing was similarly rejected. Judge Leheny mentioned the criminal penalty and the availability of a CUTPA action, should the other elements of such a claim be satisfied. Similarly, in American Corp. v. Two River Road LLC,1995 Ct. Sup. 14231, Judge Celotto held that the purpose of § 35-1 was to protect the public against fraud, and nothing in the plain language of CT Page 6451 the statute prevented a noncomplying party from maintaining an action. The failure to file a trade name certificate did not, then, defeat subject matter jurisdiction.
In the present factual situation, it is not disputed that the initial filing was valid. The name of "Harved Realty" has some bureaucratic validity. The defendant has relied upon TalcottRidge Apartments v. Kane, H-412, for the proposition that the Harved Realty has no standing to sue. In Talcott Ridge, however, the issue was not so much compliance with § 35-1 as it was with the apparent lack of existence of the claimed principal: no witness was able to identify the owner with any degree of certainty. In the case at hand, the situation is abundantly clear.
It is held, then, that (1) there is no question of any fraud or misleading conduct; (2) "Harved Realty" is a registered trade name; (3) the Hobermans did not at all times comply with §35-1; but (4) the remedy for such noncompliance does not extend to denial of access to the courts, at least where, as here, there was no unscrupulous conduct, but only inadvertence and where all parties knew with whom they were dealing in fact. The motion is denied.
Beach, J.